Good morning, Your Honors. May it please the Court, my name is Andrew Wyatt. I represent the appellant, Parvin Sieczkowski, in this matter. Your Honors, the lower court granted summary judgment on the basis that my client was unable to prove the fourth element of the McDonnell-Douglas test, meaning that showing similarly situated employees from a different class and that they were treated differently. The facts of this case are somewhat unique in the fact that my client was staying out of work based on her psychologist's recommendation letters that were sent to the employer indicating that the hostile environment that she was in, including recommendations from... Well, let me clarify, because there's just a lot there. Much has to do with the first lawsuit that Judge Fairbank ruled on, and in that lawsuit, which was an appeal, she found that there was no hostile environment, right? That's true, that's what the client was... So, given the stipulation, for purposes of this lawsuit, the only two issues remaining for purposes of summary judgment is the age and national origin discrimination claim, and the constructive discharge claim. Correct, correct. And they center around a suspension, and then the removal that ultimately resulted in termination. So what was the evidence presented in opposition to summary judgment as to age or national origin discrimination or retaliation based on EEO activity? Basically, Your Honor, it was in my client's declaration that she talked about, and I do realize that there's overlap from the other case, but there were Armenian employees that were granted promotions, that were granted transfers, and she's of Persian descent, and because of that, she felt that she was being centered out for this treatment. Because, again, being out of work, and I realize, Your Honors, that the difficulty here is that while we're focusing on one specific part of the case, understanding the background from the other parts of this case and the prior case are necessary to see the context in which this is happening. So we have a situation where she's being told, go back to work. She has a doctor that says, just ask for a transfer. The accommodation, a simple accommodation, is get transferred to a different workplace location, go back to work. And I realize, Your Honors, that this is not a disability discrimination case. However, that evidence is still relevant to the fact of why she was staying out of the workplace. Can't an employer, if somebody is absent without leave, as your client was, it does filter over into the reason for the termination. I mean, if somebody doesn't show up for work after being told to do so, even if it's on the basis of a doctor's advice, the employer has the right to make that decision, don't they? Well, Your Honor, this is probably more of a mixed motive case, where there's legitimate reasons for doing it, and then there's illegitimate reasons for doing it. But is it mixed? I mean, does it get anywhere near pretextual if somebody isn't showing up for work after being told to do it? You terminate their employment. I understand, Your Honors, and most of the time you're absolutely correct. If someone doesn't show up to work, then you should fire them. However, in this case, if you are presenting a doctor's note saying that this is creating stress, I mean, not only from an emotional point of view, but her cardiologist also wanted her not to go to work because of creating heart condition problems. And then if you look at, okay, so you're asking to have a change. Where the discrimination comes in, at least where it makes it a tribal issue of material fact, is the fact of why is that unreasonable a request? Why are you not accommodating a request? Because she never not wanted to go back to work. But that's where she needs McDonough-Douglas, doesn't she? I mean, there's no direct evidence of discrimination. Doesn't she need evidence that somebody else who was AWOL was treated better than she? I mean, isn't that where she needs it, because there's no evidence of direct discrimination? That goes back to my initial statement, is that the problem we have here is the fourth factor, is finding someone in the same situation. It's a very unique situation, and the difficulty with these factors is that, you know, the case law, and I've said it in my brief, is that the courts have found there needs to be some flexibility with these, and you have to have some common sense approach to these factors. It's not, you know, draconian where it's very, you know, it has to be exact. As with many cases, you never find exact matches. In this case, because the facts are so unique, to find someone who's AWOL that's on a doctor's note that wants to go to a transfer, it's difficult to find that. But the question is, does that negate the discrimination? And I argue not. I think that you have to look at the totality of the circumstances. And while I admit there's nothing right on as far as that fourth factor, however, if you look at it from a... I hear you, but doesn't precedent tell us that we get into this land of not going to McDonnell Douglas where there's evidence of direct discrimination? Well, Your Honor... Or direct evidence of discrimination. I appreciate what you're saying, and certainly, you know, my intention is not to make a new precedent. However, sometimes these factors don't work for every single case. And then you have to kind of take a step back from those factors and look at it and say, okay, why is this happening? I mean, you know... I hear you. Yeah, so when we get to this point, you have to ask yourself, okay, was there a good reason? I understand the terminated because she's AWOL, but was there a good reason not to transfer? There was never, ever any evidence presented by the other side of why this was such a hardship to the agency to transfer. I mean, she's a good employee. So there's another factor besides the comparative one, which is that she's performing her job satisfactorily. And I would argue... I mean, she's not coming to work. I understand that, Your Honor. However, again, and this is what makes this case tough because there's blurring from the other case to this case. When she was on the job, she was a very, very good employee. So, yeah, if you're not at work, you can't be a very good employee. But if you go back to the history of her employment, she actually was a very good employee. And I think that's what needs to be focused on. And again, the question is, okay, if you have a very good... How long was she out? Oh, I would say from 2007 to 2009, so two years. And she used up all her... Yeah, she used everything up. All her allowed time, sick time. There was never, ever any workers' compensation, which I was not the attorney on the case. I don't know why that was never done, but it was never offered as far as I know. So there was concern, wasn't there, that because of her absence, her work got shifted to other employees and whatnot? Well, again, that's a practical effect of someone being away from the job. Again, if you take this one step back and why not give her the transfer, let her work somewhere else? You could put somebody else at the... It sounds like really what you're complaining about is that she never got the transfer. What I'm complaining about, Your Honor, is the fact that when a doctor is making a recommendation, that as an accommodation, because of the stress it's causing and the potential heart problems it's causing, that it's not an unreasonable thing to look... It's one thing if there was no jobs available during that whole two-year period. That would be a different case. If they did everything they could, but what I'm saying... Let me ask you this. Within the government bureaucracy of the civil service, when one applies for a transfer, is there a way to pursue that? Well, from what I'm told, and we also cite this in our brief, that there were actually a number of jobs that she had asked that were open and available. This was, of course, prior to this lawsuit that were open and available, and she had asked for that transfer to those positions and she wasn't granted it. Please don't think I'm not listening to you, because I am. But doesn't this go back to the question, who makes the decision? If somebody is absent without leave, the doctor who says she needs a transfer or the employer says no. I mean, why? I mean, we do... I mean, I know we live in a very democratic age and won't go into that, but the fact of the matter is employers do have the responsibility and the right, do they not, to decide whether to transfer or terminate somebody. I mean, absent discrimination. I understand that. But then going back to the business judgment rule, if this is a good employee who could basically work effectively, whether it's... Let me add then, whose decision is it? The doctors, the employers, or the courts deciding whether or not who ought to make the decision? I think ultimately it's going to end up in the court. If there is a basis for determining illegal discrimination. Yes. But again, it's all based on the reasonableness of the situation. If the agency had provided evidence that it was an extreme hardship, because again, if you go back to reasonable accommodation, if it's not a hardship and this is for medical reasons, then if it's not going to create a hardship, then they should do it. Or state why it is a hardship and that they can't do it. If they say to her, you're so valuable to us in the Glendale office, we just can't afford to have you not be there, which obviously she's been gone a long time, then that's one argument. But if you just say no, and not that she's just asking for a transfer, but it's on the basis of a doctor's recommendation, then I think you have to take a look and say why. And I think that there's at least enough here, Your Honors, for this case to go back to the court. I mean, ultimately, a trier of fact, a jury, will determine who's right in this thing. But I think, Your Honors, that there should be an opportunity at least to have this case evaluated. If I have time remaining, Your Honors, I'd like to step out and then go back. Yes, you can have it. You've got four minutes for rebuttal. Thank you very much, Your Honors. We'll hear from the government. Good morning. May it please the Court. My name is Alarice Medrano. I'm the Assistant U.S. Attorney on the case. I'd like to address first, because it seems to be the concern, the transfer issue and point out that there were absolutely no facts developed in this case in regard to a transfer. The entirety of this case is based on the declaration of Ms. Sikowsky with absolutely no citations to the record and very little, if any, substantiation in the case. What her counsel appears to be arguing today is that we somehow needed to prove up whether there was somewhere we could transfer her when, in fact, the testimony of her two supervisors was that she did not request a transfer from them. And it's Celotex makes clear that Rule 56 does not require the moving parties to negate the elements of the case. It is their job to show us that there was some transfer requested, that there was a reason that she could go there, that she was able to go there, that the job was open. And he indicates that his briefs say so, but that's not the case. There's no information about open positions other than her own testimony that previous supervisors really liked her and wanted her to go to work for them. So there's nothing in the record to show that she requested a transfer? There is not. There is one reference in the removal documents to an offer being made in early 2008 that she declined. That, again, going back to the prior 2008 case, Likowski 1, as we've identified it, that appears to be an offer that was made during the administrative processing of that case, and she did not avail herself of that. But besides that, there is no evidence that's been developed about any possible places for her to go. She was out of work for 18 months, and she, in that time, did not respond to any of the requests, and there were numerous requests to provide very detailed and specific information about what kind of lead she needed, how much time she needed, when she anticipated coming back to work, and repeatedly those letters were ignored. What medical evidence is in the record is very minimal. They are single-page documents, in most cases, that request further periods of leave without much substantiation. In fact, counsel references a heart condition, which, in fact, there is no evidence of in the record. There is one piece of paper that indicates she's being signed up for some cardiac monitoring service, but there is no information from any cardiologist about what her condition is or why she couldn't return to work. If the Court has no further questions, I would submit on the brief. Okay. Thank you again, Your Honors. I do want to point out, because the requesting for transfers, that occurred prior to this case being filed, but there is something in the record that counsel did not point to, and that is the November 2008 letter from Dr. Jaffe to the medical director requesting the accommodation of the transfer. So whether there is evidence of her requesting it, there is a medical request for a transfer that occurred in November of 2008, and that was during that period of what they considered AWOL. So there is evidence in the record that points to, and again, never addressed, as to why was it never responded to. There is no letters from the medical director back saying, no, we can't do it. Yes, we have the ultimate burden of proof, but they're bringing a motion, and they are in control of most of the record. So very easily they could have gotten a declaration from the medical director, and I know that we're doing 20-20 hindsight here, but nonetheless, you know, if they want to nip this thing in the bud, very easy to get a declaration from that doctor saying that they discussed it with him, and there's nothing available. There's all kinds of evidence they could have presented in saddling up this motion. As far as statements by supervisors that conflict with the statement by my client, okay, now it comes down to credibility, and again, points back to this needs to go in front of a trier of fact, and let them decide. My client's willing to accept whatever the consequence of her day in court, but she's asking this court to allow her to have her day in court. And with that, I thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted at this time.
judges: Motz, Paez, Nguyen